May it please the court, my name is Stephanie Adractis and I represent the appellant Jarvell Smart. There was conflicting testimony at trial regarding whether 15-year-old Jarvell Smart was present during a shooting. Resolving that conflict in favor of the verdict would establish only this, that Smart was merely present when his co-defendant, Sergio Calhoun, fired a gun in self-defense. Isn't there also conflicting evidence as to whether or not he actually had a gun at the scene of the crime that the jury was asked to resolve? Your Honor, the only evidence that would suggest that he had had a gun was Eugene Gibson's prior statement to the police saying that Smart had a gun. But didn't that, that came in when they had to impeach Gibson who tried to recant that statement, right? That's correct, Your Honor. Gibson testified under oath at trial that what he had said to the police was not true. And then they impeached him with the prior. So the jury had to resolve that question as well. Your Honor, understood, but one of the factors here is whether or not that evidence standing alone would be constitutionally sufficient to make a finding, number one, that Smart had a gun, in fact, a repudiated statement, one that was repudiated under oath by an admitted liar, and also given the fact that the jury resolved that question in Smart's favor. It's specifically interdefinable. The fact that they didn't convict him of a profound or reasonable doubt of the use of the firearm doesn't necessarily lead us to conclude that he wasn't there. Wasn't there the testimony of another neighbor or eyewitness to the shooting who testified that they saw muzzle flashes? That was Eugene Gibson, Your Honor. That was. Did Eugene Gibson actually say he saw a gun or did he only say he saw muzzle flashes? Your Honor, I reproduced that testimony in the brief because I thought it was so striking. He did not say that that information was fed to him by the police during the interview. And if one looks at his entire interview, which is in the excerpts of record, a lot of his responses are unintelligible. He's mumbling. He's not answering the questions. And the police interrogators are feeding him the information. And when he said he saw muzzle flashes, he didn't say he saw muzzle flashes. What happened was they said you saw muzzle flashes, and then it says no audible response. Correct, Your Honor. That and that reinforces the point I was trying to make in response to the question, which is an unintelligible response in response to a suggestion by a police officer that a muzzle flash was seen is not constitutional. But then he did say a trial that he said at the hearing that there were muzzle flashes, but that he was lying. That was based on the transcript that I reproduced in the brief, which is simply not credible. It's not credible evidence. And also, Sabrina Norman, who was the government's primary witness, testified twice during the trial that Smart wasn't armed. She said she saw both of his hands. But she also testified that Calhoun was the one who said to the shorter man, did you get him? Now, that, I mean, if the jury credits that statement, that certainly would also support the conclusion that he may well have been armed. Your Honor, the did you get him statement, it does not make sense, because Norman herself said that. Well, it makes sense. It makes sense if he was armed, because the inference would be that both of them were shooting, and one shooter says to the other, did you get him, suggesting that the other shot was from the other side of the car, that they weren't just innocent bystanders caught in a crossfire. Right, Your Honor. But when you try to reconcile that statement with Norman's other testimony, it doesn't make sense. And if one looks at the prosecutor's closing argument at trial, he himself said this was an extremely chaotic situation and you can't credit Sabrina Norman's impressions about where the shots were coming from. He made that argument himself, because she had said initially that the first volleys were coming from that side of the car. I'm sorry. Are you saying the prosecutor didn't credit the fact that somebody said did you get him? He didn't discuss that as being incredible, but he discussed Norman's testimony about where the shots were coming from as not being accurate. I guess the problem I'm having with your argument is I understand, and I think I'd make the same argument, why you want to sort of take each piece apart piece by piece, but it seems to me the resolution of this question is inherently a jury question that only the collective minds of 12 people can make any sense out of. And it seems to me that if you believe Gibson told the police the truth the first time and was lying when he recanted on the witness stand, whether he feared retaliation, whatever the reason was, and you credit the statement that Calhoun and Smart were there, and that Calhoun was the one who said did you get him, and you consider the testimony of muzzle flashes that were seen close to the body, then why couldn't a reasonable jury conclude that he participated in the crime? Starting, Your Honor, with Eugene Gibson's testimony, he gave three different stories, not two. His first story was I wasn't there, I don't know what you're talking about. I mean, we get that all the time in these cases. That's why juries have to decide. And we also know that people don't always tell the truth the same time when they're asked about the events on three different occasions. So where does that get us? Well, Your Honor, I think the court has to make a determination, too, as to the quality of the evidence supporting a 28-year-to-life sentence for a 15-year-old boy and the quality of Eugene Gibson's statement when it was fed to him by the police. That's not our standard of review, though. Under AEDPA, it doesn't ask us about the age of the defendant. Maybe it should, but it doesn't. It says, was the State court's decision on the adequacy or sufficiency of the evidence under the Jackson standard unreasonable, objectively unreasonable? So that's where we're left with deciding here. And, Your Honor, that's where I would submit it is objectively unreasonable to rest such a conviction on the word of a person who recanted under oath and who gave three different stories to the police and whose second story was fed to him by the AEDPA. So you're saying, as a matter of law, the jury is not allowed to pick one of the three versions as the most plausible? Your Honor, there's no evidence here that the jury picked Eugene Gibson's version. If they had, they would have found that he had a gun in his hand, and they explicitly found that that was not correct. So we can't say the jury credited Gibson, because if they had, they would have made that finding. But don't we have case law that says just because the jury acquits on a charge that there's otherwise evidence sufficient to support, that could be the result of a compromise within the jury in deliberations. I think there's a Supreme Court case that says that. That doesn't invalidate the count of conviction. Your Honor, understanding that point, however, when the missile. I'm right on the law, am I not? Yes, Your Honor. But in the context of the sufficiency of the evidence on whether or not Mr. Smart was aiding and abetting, resting his entire conviction on that single point, the repudiated statement that was fed to this witness by a police officer, I believe that's constitutionally insufficient to support that. On the legal question of whether the case is Powell, and Powell dealt with a different situation in which there were two conflicting, facially conflicting verdicts. Whether on a sufficiency claim as to the first verdict, you can consider the other verdict or whether instead you have to assume that there was a conflict. In other words, it's one thing to say, well, look, there's a conflict. What should we do with it? But does that carry over to a situation in which, by all accounts, you know what the jury found with regard to the gun and there's no reason to attribute a conflict, a conflicting? And is there any case law on that? Your Honor, I don't have any that says that. Either direction. That's correct, Your Honor. And as well, in addition to this point about the presence and about whether or not Smart had a gun, even resolving, assuming that that has a reasonable conflict and despite the jury's finding that he did not have a gun at the time of the incident. Well, they didn't find that he didn't have. Your brief says twice that they found that he didn't have. Once in the opening brief and once in the reply brief that they found he didn't have a gun. That's not what they found. They found he didn't use a gun. Understood, Your Honor. All right. Now, the question is, what does that mean under California law? I believe under Federal law you can use a gun without actually shooting it. Right? You can use it certainly if you point it. And I don't know whether you can use it if you have it in your back pocket. But do you know what the jury was instructed here about what using a gun means? I looked. I couldn't find any instructions. Your Honor, I don't. The use of the gun because it wasn't at issue in the — in the — Well, but if we're going to back out whatever they found, we have to know what they found. And what they found, I mean, if he had it, for example, in his back pocket, and if that was not inconsistent with the finding that he didn't use a gun, which may well be the case. Your Honor, I don't. I'm sorry. Go ahead. I believe that the standard was whether or not he was personally armed. However, I could do a letter brief on this if the Court wishes. The standard was whether he was personally armed? Right. That's what I thought. I thought that the — the conviction was for use of the gun. Your Honor, he was convicted of two counts of assault with a firearm as well as one count of shooting in an occupied vehicle. But as to both of the — all three of those convictions, he was convicted as an aider and a better. Right. And so there was — that was the government's theory argued throughout the case, and it was the instructions at trial. I understand. But he was acquitted of what? Of not being personally armed with a firearm. That was the — that was what the jury found not true. So there was an enhancement or something for personally armed? Yes, Your Honor. Not use? Correct, Your Honor. Personal arming enhancement. That's my understanding. And I could submit a letter brief on this if the Court wishes more detail. If I could address the self-defense issue, because the second prong of our sufficiency analysis is even assuming that he was present, even assuming that he had a gun for self-defense, that the government failed in its duty to disprove self-defense here. And people in the car were bystanders to the argument, though. And there was testimony that they were chasing after the car, and there's no testimony that the people in the car were trying to get these guys. Correct, Your Honor. But there was no evidence about who it was that was chasing the car, and the evidence was as well that the people who were in the car and the vehicle that this purportedly was mistaken for belonged to a crip. And my client was asserted to have been a crip. The car was chased by the shooters after they tried to flee from the scene, was it not? More shots were fired into the car. That's correct, Your Honor. But the government argued at trial a theory that the people who were shooting into the car were bloods, not my client, but the ones who were shooting at my client, because they thought that the car belonged to a crip leader. And so there wasn't any evidence regarding who it was that chased the car and shot it, and the motive to shoot at the crip. There's testimony that at least one of them was Calhoun, because he was identified in the lineup, was he not? Norman and Rayford were not looking at who was chasing the car. There was no identification of Calhoun as being the person who chased the car. She said, Norman, I was ducked down the entire time. I was driving away from the incident, and she was not looking up. Hadn't they just been identified during the story as being near the car, shooting into it, before they tried to back away? Yes, but there were people shooting at Calhoun and Smart, assuming that's them. There were at least three others, Gibson or I'm sorry, at least two others, Gibson and Jacoby James, who were rivals who were equally close to the car on the other side. I guess I'm still not seeing self-defense here. I think we understand your position, and you have exceeded your time significantly,  Thank you, Your Honor. May it please the Court. I'm Tammy Crenson, representing Warden Hedgepeth. Appellant has a very difficult burden here. Not only is Jackson a very deferential standard, but the AEDPA narrows relief here. He has to show that no fair-minded jurist could conclude, as the state court did. And based on the facts here, he simply cannot meet that burden. And I just want to clarify a couple of things. It was that Smart was not found guilty of the personal use enhancements, which require him to have used the gun to personally inflict great bodily injury. So the jury could have found that he was armed, but didn't use it. Is that right? Certainly the jury could have found that. And all inferences have to be drawn in favor of the verdict. Do you know what the instructions were under California law with regard to personal use? I thought there were two different sections. One is personal use and one is personally inflicting great bodily injury. Does the personal use include inflicting great bodily injury? What if you stand there and point the gun, but don't shoot it under the instructions that the jury was given? And I'm not sure about that, Your Honor. It was my understanding that the enhancement required, it had to be a narrow finding that there was use and that it inflicted great bodily injury. I thought there were two enhancements. There were two different ones, that he was personally using a firearm and personally inflicted great bodily injury, and he was acquitted of both of them. And I'm not sure if they were two separate or not. I understood that the court of appeal, they only found the one enhancement and the other one, one qualifying offense. And so that's why their sentence wasn't enhanced for either one of them. So I'm not sure about that. I don't know whether under California law what personal use of a firearm means or what the jury was told that it means. I'm not sure what the jury was told in this particular case. I thought there was just one instruction that talked about or that requires  a firearm. Can you help me? I'm looking at the Appellant's Excerpt of Record 285. It's the testimony on redirect examination of Ms. Norman. And Mr. Asker, the Deputy District Attorney, asks at line 8, Ms. Norman, the shorter of the two, defendant smart, did you, were you able to see him in such a way that you could tell one way or the other whether he had a gun in his hand? Answer, I could, yes. I could tell he had a gun in his hand. Question, could and did he or did he not? Answer, he did. So I'm a little confused by your opponent's argument. I read that testimony as suggesting that Ms. Norman actually put the gun in Mr. Smart's hand. I think where it had been confusing is that she initially had said to the police that she saw the, she thought she could recognize the taller man, but she didn't see the shorter man very well. Whereas at trial she did identify him and said when he stepped in front of the car, when the two stepped in front of the car, she did get a look at his face and identified him as the second person and with the firearm. So the jury had, if they believed her, the jury had evidence from which they could conclude based on the victim's statement that Smart had a gun in his hand. Certainly. And the whole, there were a lot of statements that were made prior to and at trial that changed. But the credibility issues and those things were all in front of the jury. And the jury decides those issues. And the Supreme Court has made clear that those are jury issues to decide. So while we can argue whether or how weak the evidence was, and certainly the evidence was weaker that he had, that Smart had a gun, but drawing all reasonable inferences in favor of the prosecution's evidence, there was evidence that he did. And even without the excuse. Well, I was going to say what I think you were about to say, which is what if he didn't? I mean, the Court of Appeals' opinion actually doesn't rely on him having a gun at all, maybe because of the – it seems, by the way, that there was an enhancement that, Connie, you're talking about, but that he was found guilty of. And that was where the 50 years was. But there was a separate set of charges of which he was acquitted having to do with personally using the gun. And that's what I'm trying to point out. But here in the Court of Appeals' opinion, they found that there was substantial evidence without relying on anything about him actually having a gun based on the did-you-get-him statement, the fact that they previously had written letters to one    It said that there was insufficient evidence for aiding and abetting activities on guns. A rational juror could conclude that Smith knew that Calhoun was armed and a gang shooting was possible, that Smith intended to facilitate or encourage his gang compatriots if a shooting occurred, and that by act or advice, he promoted and encouraged. It doesn't say anything about a conclusion that Smart actually had a gun. Correct. The State court even acknowledged the evidence that he had a gun was weaker. The whole issue was whether he was, there was sufficient evidence for aiding and abetting, and here there certainly was. It wasn't just mere presence at the scene. The evidence, when you look and construe it in favor of the prosecution, too, is that he went with a friend into a disputed gang territory. His friend was armed. They had written letters about gang activities and guns, and then they, prior to that, they knew one of the rival gang members had been beat up by one of their gang members a day or two before, and they went into that area. And that's, so the fact that he doesn't have to have a gun or even have to have used a gun to be an aider and abetter. So what was he doing to aid or abet at that point? I mean, I'm wondering, he was there. If he was there unarmed, what good was he? Well, he's backing up a friend. He is. What does that mean, backing up a friend? He's there to aid in that commission of the crime by being there with him, encouraging him. He doesn't have to actually take any actions. He can encourage or promote it. Great. Shoot the guy. I wonder what encourage means in an aid and abet situation. Is that what it means? It's a good idea to shoot the guy? Well, under California law, you look at the conduct. You can look at the conduct prior to, whether they accompanied him, whether they accompanied him afterwards. And the fact that you can look at the presence of the crime, it's certainly not definitive. And if it's just mere presence, it's not enough. That's what I'm trying to find out. What distinguishes mere presence, if he didn't have a gun, from encouraging and facilitating? Well, the fact that he's a gang member with a fellow gang member walking into a disputed territory and they know somebody's and he can aid him or he can, as far as accompanying him, he can be encouraging him and promoting this crime. It doesn't take an overt action under California law. And California has made that determination. This Court is bound by that under Jackson as well as under the AEDPA. Aside from the testimony by Ms. Norman, and I believe we talked about the dispute over the testimony of Mr. Gibson, who said he saw muzzle flashes near Mr. Smart, was there any other evidence that the State offered to support the aiding and abetting charge? You've mentioned going into the gang territory and knowing about the rumble the day before. Yes. I mean, that was the whole thing. They were together. He knew his – you could draw the inference that he knew his friend had a gun. They were going into that territory. We've covered all that. Right. Is there any other piece of evidence on which the jury could have relied in finding him guilty of aiding and abetting? I think that about covered it. That's the case. Yes. One thing I was – you probably don't know, and I couldn't figure it out. The other definite thing that Ms. Norman said with regard to her identification, she never said it was – when she said this did you get him thing, she didn't say it was Smart who said it. She said it was the taller guy who said it to the shorter guy, right? And she also said, I think, that the shorter guy had dreadlocks or a twist or something in his hair. I'm not sure if she said the shorter one had the dreadlocks or not, but she did say someone there did. And – well, then, if you don't know, it's not going to help. Because I was confused about whether – you know, since she was kind of unclear about her identification, what this hair thing – where this hair thing led. But it sounds like you're not sure either. Well, and I did – and emphasizing, too, in closing, that the statement that did you get him, if the taller individual has been – who has been identified as Calhoun said that, that certainly indicates they were acting in tandem and there was an aiding and abetting issue. And certainly if – which the evidence doesn't show this, but if the shorter individual said that, then that would show that there's an aiding and abetting, too. If there's no further questions, I'll submit. I think there are not. Thank you. And we used a lot of your time with questions. You may have one minute for rebuttal. Thank you, Your Honor. First, I'd like to address the Court's question regarding whether in self-defense how that affects the right to self-defense if other unintended victims are caught in the crossfire. Under California law, self-defense applies even if there are unintended victims that are caught in the crossfire. Assuming that the jury believed that it was Calhoun and Smart who initiated the firing and that it was Calhoun and Smart who followed the vehicle as the victim tried to drive away to the security booth, why wouldn't that be sufficient to discount any evidence of self-defense? Your Honor, there was absolutely no evidence that Smart and Calhoun initiated any firing. All of the evidence and the prosecutor's argument at trial was consistent that Jacoby James fired at them first. So they ---- But I thought there was some problem with California law which seems to say that it's not self-defense if you're a gang guy and go into gang territory intending to have a shootout, essentially, even if the other guy shoots first. Your Honor, the instruction regarding picking a fight essentially would require much more than walking into an area that's in dispute. I mean, the government here, the Respondents, conceded that's the whole case, that they just walked in there. You would have to do more to initiate a fight with someone else than simply be there and not be minding your own business. Well, having had a shootout a couple weeks before and knowing that this was their territory and knowing that ---- There wasn't a shootout. That seems to be the case. There wasn't a shootout. There was a fight at a party that one of the crip gang members got in a physical fight with another ---- with a counter gang member. And so there was no evidence that this incident, this shooting incident, had anything to do with that other than some speculative evidence. But in order to find that there was ---- I mean, aside from exhaustion problems and so on, in order to find that there was a self-defense problem here, we'd have to deal with that strain of California law. You couldn't ---- and as to whether the jury had sufficient evidence for it, you couldn't just use ordinary self-defense notions about who shot first. That wasn't going to do it, right? Well, Your Honor, I think you could because there was no proof that Smart and Calhoun were doing anything except walking around. I mean, that there has to be more than just being there. On another grounds turf. There was no evidence that ---- Members of a rival gang. Your Honor, I don't think that would be seen as an affront by the bloods. There was no evidence that this was another gang's turf. In fact, the evidence from Norman. Norman was saying, I live right next door to this guy that's one of the main crips, so the evidence would suggest that, in fact, this was territory of the crip gang, which was the gang that my client was supposed to be a member of. So it wouldn't suggest that was rival territory at all, that they were in the right place if you want to look at it that way. Thank you, counsel. I think we understand your position on that as well as the other issues. We appreciate the arguments of both counsel. The case is submitted.
judges: Graber, Berzon, Tallman